1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   LIFELAST, INC.,

11                  Plaintiff,

12          v.

13   CHARTER OAK FIRE INSURANCE
     COMPANY and TRAVELERS
14   INDEMNITY COMPANY,

15                  Defendant.

CASE NO. C14-1031JLR

ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS OR IN THE
ALTERNATIVE TRANSFER
VENUE

16                      **INTRODUCTION**

17          Before the court is Defendants Charter Oak Fire Insurance Company and

18   Travelers Indemnity Company's (collectively, "Travelers") motion to dismiss or transfer

19   this action for lack of proper venue pursuant to 28 U.S.C. § 1406.  (Mot. (Dkt # 10).)  In

20   the alternative, Defendants move the court to transfer venue to the Central District of

21   Utah pursuant to 28 U.S.C. § 1404, or dismiss or transfer venue pursuant to the doctrine

22   of *forum non conveniens* or the "*Brillhart* Abstention Doctrine."  (*Id.*)  Having

ORDER- 1

1    considered the parties' briefing, the balance of the record, and the relevant law, the court

2    DENIES Travelers' motion to dismiss or transfer venue.[1]

3                                          **BACKGROUND**

4            This action arises out of a dispute over an insurance company's decision to deny

5    coverage to its named insured.  (Notice (Dkt. # 1) at 2).

6    **A. The Parties**

7            Plaintiff LifeLast, Inc. ("LifeLast") is a Washington corporation whose

8    principal place of business is in Vancouver, Washington.  (Notice (Dkt. # 1) Ex. 1 ¶ 1.)

9    LifeLast brings this action as the assignee of Travelers' policy holders, Corrosion Control

10   Technology, Inc. ("CCT") and its executive officer and/or director Jeffery Mattson

11   (collectively "CCT/Mattson").  (*Id.* ¶ 5.)  CCT is a Utah corporation with its principal

12   place of business in the state of Utah.  (Lether Decl. (Dkt. # 11) ¶ 2.)

13           Travelers is a Connecticut corporation with its principal place of business in

14   Hartford, Connecticut.  (Notice Ex. 1 ¶ 2.)  Although Travelers is based in Connecticut,

15   the company conducts business in Washington.  (*See* Mot. at 7.)

16   **B. The Underlying Action**

17           On June 29, 2011, LifeLast filed a lawsuit against CCT/Mattson in the United

18   States District Court for the Central District of Utah ("the Underlying Action").  (Notice

19   Ex. 1 ¶ 9.)  Among other claims, LifeLast alleged that CCT/Mattson defamed LifeLast

20

21   _____

22   [1] No party has requested oral argument, and the court deems this motion to be appropriate
     for disposition without it.

ORDER- 2

and disparaged its products.  (*Id.*)  LifeLast's total claimed damages in the Underlying

Action exceeded $16 million.  (*Id.*)

On May 5, 2014, LifeLast and CCT/Mattson resolved all claims between them

for the compromised amount of $6,925,000 as the result of a formal mediation.  (*Id.*

¶ 29.)  CCT/Mattson and Admiral Insurance Company combined to pay $1,425,000 of

the settlement amount, thereby exhausting the Admiral policy.  (*Id.* ¶¶ 25, 30.)

CCT/Mattson remained liable for the remaining $5,500,000.  (*Id.* ¶ 31.)  CCT/Mattson

then assigned to LifeLast, without recourse or warrant, all right, title, and interest in and

to any cause of action or claim that CCT/Mattson has or may have against its insurer

Travelers.  (*Id.* ¶ 32.)  The assignment was conditioned on LifeLast's agreement to never

enforce the remaining settlement amount against any of CCT/Mattson's assets, other than

the Travelers insurance policies.  (*Id.*)

**C.  The Insurance Dispute**

CCT/Mattson requested insurance benefits from Travelers against LifeLast's

claims in the Underlying Action, including defense and indemnity coverage.  (*Id.* ¶ 10.)

In an October 10, 2011, letter to CCT/Mattson, Travelers denied defense and indemnity

coverage to CCT/Mattson.  (*Id.* ¶ 20.)  In the letter, Travelers stated that the policy

contained a professional liability exclusion that precluded coverage for this matter.  (*Id.*)

LifeLast's counsel furnished CCT/Mattson with additional information explaining why

LifeLast's claims were arguably covered and requested that Travelers reconsider its

denial of coverage.  (*Id.* ¶ 24.)  Travelers allegedly refused to reconsider its denial of

1    coverage.  (*Id.* ¶ 24.)  With no coverage available from Travelers, CCT/Mattson only had

2    $2 million in coverage available under the separate Admiral policy.  (*Id.* ¶ 25.)

3    **D. The Present Action**

4    One June 18, 2014, LifeLast filed a complaint in King County Superior Court

5    alleging that Travelers breached its separate obligations to defend and indemnify

6    CCT/Mattson against the Underlying Action.  (Notice at 1-2.)  In response, Travelers

7    filed a notice of removal, removing the case to the United States District Court for the

8    Western District of Washington.  (*Id.* Ex. 10.)  Travelers then filed the present motion to

9    dismiss or transfer venue.  (*See generally* Mot.)

10                                   **ANALYSIS**

11   Travelers makes various arguments in its motion to dismiss or transfer venue.

12   First, Travelers argues that venue is improper under 28 U.S.C. § 1391(b) and therefore

13   the suit should be dismissed or transferred under 28 U.S.C. § 1406.  (*See* Mot. at 5-8.)

14   Second, even if venue is proper in the Western District of Washington, Travelers argues

15   that this court should transfer the case to the Central District of Utah pursuant to 28

16   U.S.C. § 1404(a).  (*Id.* at 8.)  Third, Travelers argues that the matter should be dismissed

17   or transferred under the doctrine of *forum non conveniens*.  (*Id.* at 10.)  Lastly, Travelers

18   argues that this matter should be dismissed or transferred under the "*Brillhart* Abstention

19   Doctrine."  (*Id.* at 14.)

20   **A. Travelers' Motion to Dismiss or Transfer Venue for Improper Venue**

21   Travelers asks this court to either dismiss or transfer this case to a different district

22   pursuant to 28 U.S.C. § 1406 for lack of proper venue under 28 U.S.C. § 1391.  (*See id.*

at 5-8.)  Section 1406 allows a court in a district with improper venue to dismiss the case or transfer it to a different district:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).  Thus, if the court finds venue is improper in the Western District of Washington, it may dismiss Travelers' suit or transfer venue to another district where the suit could have been brought.  If the court finds venue is proper in the Western District of Washington, then § 1406 is inapplicable.

In determining whether venue is proper in the Western District of Washington, Travelers relies on the general venue statute, 29 U.S.C. § 1391.  Section 1391 is inapplicable to determine whether venue is proper because this case was removed from state court, and venue for a removed action is governed by 28 U.S.C. § 1441(a).  *Polizzi v. Cowles Magazines, Inc.*, 343 U.S. 663, 665 (1953).  Section 1441(a) expressly provides that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  The Supreme Court in *Polizzi* explained that because a removed action was not "brought" in federal court, but initiated in state court, § 1441 governs the venue of removed cases, not § 1391.  *Polizzi,* 345 U.S. at 665-66; *see also Nw. Pipe Co. v. Thyssenkrupp Steel USA, LLC*, No. C13-5342RBL, 2013 WL 3716677, at *2 (W.D. Wash. July 12, 2013) ("Section 1391 is inapplicable to determine whether venue is

ORDER- 5

1   proper because this case was removed, and the venue for a removed action is governed by

2   28 U.S.C. § 1441(a).").

3          Travelers removed LifeLast's lawsuit from King County Superior to the Western

4   District of Washington, (*see generally* Notice), which is the district embracing the place

5   where this action was pending.  *See* 28 U.S.C. § 1441(a).  Thus, venue is proper here and

6   § 1406 does not apply.  Consequently, the court denies Travelers' motion to dismiss or

7   transfer this suit based on 28 U.S.C. § 1406.

8   **B.  Traveler's Motion to Transfer Venue under § 1404(a)**

9          Alternatively, Travelers asks the court to transfer venue under 28 U.S.C.

10  § 1404(a).  (*See* Mot. at 8.)  Section 1404 grants judges discretion to determine whether

11  to transfer a case to another district.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495,

12  498 (9th Cir. 2000).  Section 1404(a) states:

13          For the convenience of parties and witnesses, in the interest of justice, a
            district court may transfer any civil action to any other district or division
14          where it might have been brought or to any district or division to which all
            parties have consented.

15  28 U.S.C. § 1404(a).  Thus, although venue is proper under 28 U.S.C. § 1441(a),

16  Travelers may seek discretionary transfer pursuant to § 1404(a).  The purpose of

17  § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants,

18  witnesses, and the public against unnecessary inconvenience and expense."  *Pedigo*

19  *Prod., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. C12-5502BHS, 2013 WL 364814, at

20  *2 (W.D. Wash. Jan. 30, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616

21  (1964)).  Travelers bears the burden of showing transfer is appropriate.  *Piper Aircraft*

22

ORDER- 6

1  *Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Decker Coal Co. v. Commonwealth Edison*

2  *Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

3      In determining whether to transfer venue pursuant to § 1404(a), the Ninth Circuit

4  in *Jones* articulated several factors the court should consider, including: "(1) the location

5  where the relevant agreements were negotiated and executed, (2) the state that is most

6  familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective

7  parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action

8  in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the

9  availability of compulsory process to compel attendance of unwilling non-party

10  witnesses, and (8) the ease of access to sources of proof." *Jones,* 211 F.3d at 498-99.

11  Other important factors include the presence of a forum selection clause and relevant

12  public policy considerations of the forum state. *Id.* at 499.  The court considers each of

13  these factors in turn.

14      **1.  The Location where the Agreements were Negotiated and Executed**

15      The first factor favors venue in the location where the agreement was negotiated

16  and executed.  *Id.*  Travelers argues that the insurance policies were negotiated and

17  delivered to CCT/Mattson in Utah.  (Reply (Dkt. # 15) at 6; Jennings Decl. (Dkt. # 12)

18  ¶ 3.)  LifeLast counters that, although the insurance policies were issued to a Utah

19  policyholder, insurance policies are not negotiated and the only evidence presented

20  suggests that the policies were executed by Travelers in Connecticut.  (Resp. (Dkt. # 13)

21  at 5-6; Jennings Decl. Ex. 6 at 3.)  Travelers nevertheless responds that the list of

22  endorsements to the prime policy forms is evidence that the parties engaged in

1  negotiations and that any such negotiations would have occurred in Utah with the original

2  insured, CCT/Mattson.  (*See* Reply at 6; *see, e.g.*, Jennings Decl. Ex. 4 at 6.)  Although

3  the insurance policy was executed by Travelers in Connecticut, the execution was

4  deemed valid only if the insurance policy was countersigned by Travelers' authorized

5  representative in Murray, Utah.  (*Id.* at Ex. 4 at 3-4.)  On balance, the court concludes

6  that the insurance policy in question was negotiated and executed in Utah, and that this

7  factor therefore weighs in favor of transfer.

8  **2.  The State Most Familiar with the Governing Law**

9  The second factor favors the state that is most familiar with the governing law.

10  *Jones,* 211 F.3d at 499.  Travelers argues that Utah law should apply since this case deals

11  with a dispute over insurance coverage allegedly owed to a Utah insured, the Underlying

12  Action was litigated in Utah, and the assignment and settlement of the Underlying Action

13  took place in Utah.  (Mot. at 9.)  LifeLast, however, disputes that Utah law will

14  necessarily apply to its claims involving insurance coverage.  (Resp. at 6-7.)  LifeLast

15  also argues that even if Utah law ultimately applies, federal district courts routinely apply

16  laws of other jurisdictions in diversity actions, giving this factor little weight overall.  (*Id.*

17  at 7.)

18  It is unnecessary for the court to make a choice-of-law determination in the

19  context of this venue dispute.  When the laws of more than one state potentially apply, a

20  federal district court sitting in diversity applies choice-of-law rules from the forum state.

21  *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941) (holding that a

22  federal court sitting in diversity applies the conflict-of-law rules of the state in which it

1   sits); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,* 472 F. Supp. 2d 1183, 1191 (S.D.

2   Cal. 2007).  Moreover, even if the case is transferred, the district court in Utah will apply

3   Washington's choice-of-law rules to determine what law governs the insurance policies.

4   *See Newton v. Thomason,* 22 F.3d 1455, 1459 (9th Cir. 1994) (noting the "requirement

5   that the transferee court follow the choice of law rules of the transferor court" when a

6   case is transferred under 28 U.S.C. § 1404(a)).  Thus, the only law that will definitely

7   apply in this matter, irrespective of the ultimate forum, is Washington's choice-of-law

8   rules.

9        In addition, federal courts are routinely called upon to apply the law of other

10  jurisdictions.  *See Houk v. Kimberly-Clark Corp.,* 613 F. Supp. 923, 932 (D. Mo. 1985)

11  ("This court is routinely called upon to apply the law of other jurisdictions in diversity

12  actions; hence, the possibility that [a foreign] law might govern this action is not of great

13  moment.")  Thus, "the general view . . . is that this factor is to be given little weight

14  where . . . the foreign law to be applied is neither complex [n]or unsettled." *Id.*

15       On balance, the court concludes that this factor is neutral.  Irrespective of whether

16  this action proceeds in Utah or Washington, the district court will be required to apply

17  Washington's choice-of-law rules.  Even if Utah substantive law ultimately applies to

18  LifeLast's claims (which the court does not decide), no party has asserted that the

19  substantive law at issue is particularly complex or difficult to apply.  Given that both

20  courts will be required to apply Washington's choice-of-law rules and given the lack of

21  complexity in the substantive law at issue, the court concludes that this factor is neutral

22  with respect to transfer.

### 3.  Plaintiff's Choice of Forum

As the plaintiff in this action, LifeLast's choice of forum receives deference under § 1404(a) and Travelers must "make a strong showing of inconvenience" to upset that choice. *Decker Coal*, 805 F.2d at 843.  Travelers argues that LifeLast is forum shopping by filing a Utah-based injury in Washington, and thus, venue should be transferred to Utah. (Reply at 7-8; Jennings Decl. ¶¶ 10, 11, 12).  LifeLast argues that it chose to bring this action in its home forum, and the court should not disturb its choice without a strong showing of inconvenience by Travelers.  (Resp. at 8); *see Decker Coal,* 805 F.2d at 843.

LifeLast is a Washington corporation with its principal place of business in Washington.  (Notice Ex. 1 (Compl.) ¶ 1.)  LifeLast currently has nine employees, all of whom are located in Washington.  (Buratto Decl. ¶ 5.)  LifeLast has strong ties with Washington and chose to bring suit here.  Travelers, which is located in Connecticut, fails to make a showing that it will be more inconvenienced by litigating in Washington than in Utah.  Thus, LifeLast's choice of forum receives deference, and the court concludes that this factor weighs against transfer.

### 4.  The Parties' Contacts with the Forum

The fourth factor focuses on the respective parties' contacts with the forum. *Jones,* 211 F.3d at 498.  Travelers argues that LifeLast has admitted to being involved in projects in other states, including Utah.  (Reply at 8; Lether Decl. (Dkt. # 11) Ex. B ¶¶ 12, 18, 19.)  Furthermore, Travelers argues that since LifeLast originally brought suit against CCT/Mattson in Utah and sought relief under Utah's laws, LifeLast has sufficient contact with Utah to warrant transfer.  (Lether Decl. Ex. 1 at 2.*)*  On the other hand,

ORDER- 10

1  LifeLast argues that Travelers has admitted that it is doing business in Washington.

2  (Resp. at 8 (citing Mot. at 10).)  Further, LifeLast points out that because LifeLast is a

3  Washington corporation with its principal place of business in Vancouver, Washington

4  (Buratto Decl. ¶¶ 3-4) and Travelers is incorporated in and has its principal place of

5  business in Connecticut (Notice (Dkt. # 1) at 3), no party to this lawsuit is actually

6  located in Utah.  (Resp. at 8-9; Notice Ex. 1 (Compl.) ¶¶ 1, 2.)

7          The parties' contacts are stronger with Washington than Utah.  Although both

8  LifeLast and Travelers have done, or are doing, business in Utah, neither party is located

9  there.  Not only has LifeLast been incorporated in Washington since 1988 and has its

10  principal place of business here, but all of LifeLast's employees are located in

11  Washington.  (Buratto Decl. ¶¶ 3-5.)  Further, Travelers has acknowledged that it does

12  business in Washington State, and there is no evidence that it does more business in Utah,

13  or that its connection to that state is stronger than its connection to Washington.  Thus, on

14  balance, the parties' contacts with Washington are stronger than Utah, and the court

15  concludes that this factor weighs against transfer.

16          **5.  Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum**

17          The fifth factor focuses on the contacts between LifeLast's claims and LifeLast's

18  chosen forum.  *Jones,* 211 F.3d at 498.  Travelers argues that LifeLast filed the

19  Underlying Action in Utah concerning torts that occurred in Utah.  (Reply at 8; Lether

20  Decl. Ex. 2.)  Travelers claims the coverage issues and the present dispute became ripe in

21  Utah when CCT/Mattson requested and Travelers denied coverage.  (Reply at 8; Notice

22  Ex. 1 (Compl.) ¶ 12.)  LifeLast argues that the Utah venue of the Underlying Action is

ORDER- 11

1    irrelevant because that action is now fully-resolved.  (Resp. at 9; Buratto Decl. ¶ 6.)

2    LifeLast further argues that the only injury at issue is a Connecticut insurer's breach of its

3    duties under its policies—a cause of action that has been assigned to a Washington

4    business entity.  (Resp. at 9; Notice Ex. 1 (Compl.) ¶ 32 (alleging Mr. Mattson's

5    assignment of his claims against Travelers to LifeLast).)

6          For the purposes of 28 U.S.C. § 1404(a), courts consider a number of factors when

7    determining "the situs" of the action, including where the contract was negotiated and

8    executed, where business decisions causing the breach of contract took place, and where

9    the alleged conduct was directed.  *See Horizon House v. Cain Brothers & Co., LLC,* No.

10   C11-1762JLR, 2012 WL 398638, at *3 (W.D. Wash. Feb. 7, 2012); *Nike Inc. v.*

11   *Lombardi,* 732 F. Supp. 2d 1146, 1159 (D. Or. 2010); *Hyatt Corp. v. Personal Commc'n*

12   *Indus.,* No. C04-4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004) (stating that the

13   situs of the action is where the contract was negotiated and executed and where business

14   decisions causing the breach took place).

15         In the present case, the business decisions causing the alleged breach of contract

16   were made in Connecticut.  (*See* Jennings Decl. ¶ 12.)  However, as discussed above, the

17   contract was negotiated and executed in Utah, the Underlying Action about which

18   Travelers' coverage decisions were made occurred in Utah, and its insured,

19   CCT/Mattson, was located there.  (Jennings Decl. Ex. 4 at 6; Lether Decl. ¶ 5, Ex. B

20   (attaching complaint from Underlying Action) ¶ 2.)  LifeLast, however, experienced the

21   consequences of Travelers' alleged breach of its policies and duty of good faith in

22   Washington.  As a Washington business, LifeLast would have experienced the loss of its

1   settlement amount with CCT/Mattson here in Washington.  LifeLast's cause of action has

2   contacts with both Utah and Washington.  Thus, the court concludes that this factor is

3   neutral with respect to transfer.

4   **6.  Differences in the Costs of Litigation in the Two Forums**

5   The sixth factor looks at differences in the cost of litigation in the two forums.

6   *Jones,* 211 F.3d at 498.  Travelers argues that witnesses affiliated with CCT, experts on

7   Utah insurance law, and the Underlying Action are located in Utah, and that the location

8   of these witnesses and evidence in Utah will necessarily increase the costs of this

9   litigation if it proceeds in Washington.  (Reply at 9.)  LifeLast argues that it is a

10  Washington business and that all of its employees are located here.  (Resp. at 9; Buratto

11  Decl. ¶¶ 3-5.)  It also argues that it maintains a database of documents as part of its work

12  in the Underlying Action that renders the original location of these documents irrelevant

13  with respect to their production in this suit.  (Buratto Decl. ¶ 7.)  LifeLast asserts that

14  transferring this case to Utah would significantly increase its litigation costs.  (*Id.* ¶ 6.)

15  Additionally, LifeLast asserts that Travelers, which is located in Connecticut, will need to

16  travel to either Utah or Washington, and thus, Travelers cannot show that transfer will

17  significantly reduce the overall costs of litigation or its costs specifically.  (*See* Resp. at

18  10-11.)

19  When considering the difference in cost between two forums, courts disfavor

20  transferring venue when the overall litigation costs are not significantly reduced.

21  Specifically, "the transfer must be 'to a more convenient forum, not to a form likely to

22  prove equally convenient or inconvenient.'"  *Wang v. Lb Int'l Inc.*, No. C04-2475JLR,

ORDER- 13

1   2005 WL 2090672, at *1 (W.D. Wash. Aug 29, 2005) (quoting *Van Dusen*, 376 U.S at

2   645-46).  Courts refuse to transfer venue when "transfer would merely shift rather than

3   eliminate" costs and inconvenience.  *Decker Coal*, 805 F.2d at 843.

4        In this case, transferring venue to Utah would, at best, shift litigation costs from

5   Travelers to LifeLast, not reduce them overall.  Both parties have pointed to witnesses

6   who may be forced to travel depending on where the case is tried.  (Reply at 9; Resp. at

7   11; Buratto Decl. ¶ 5.)  On balance, Travelers has failed to meet its burden to show that

8   the cost of litigating in Utah would be less than litigating in Washington.  Therefore, the

9   court concludes that this factor weighs against transfer.

### 7.   The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

11       The availability of compulsory process favors transfer only if Utah has the ability

12  to subpoena more non-party witnesses than Washington, *see Silver Valley Partners*, 2006

13  WL 2711764 at *4 (comparing Washington and Idaho-based non-party witnesses to

14  evaluate the availability of compulsory process in each venue), and non-party witnesses

15  within Utah will likely refuse to testify.  *See id* (concluding that when "[n]one of these

16  witnesses will likely be unwilling to testify" this factor's importance is eliminated), *see*

17  *also Ahead, LLC v. KASC, Inc.*, No. C13-0187JLR, 2013 WL 1747765, at *12-13 (W.D.

18  Wash. Apr. 23, 2013).  Further, the focus is not on "the number of witnesses or quantity

19  of evidence at each locale," but rather "the materiality and importance of the anticipated

20  [evidence and] witnesses' testimony."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146

21  (9th Cir. 2001) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir.

1    1984); *see also Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367BEN (RBB),

2    2010 WL 2754249, at *2 (S.D. Cal. July 9, 2010).

3         Travelers argues that CCT is outside the subpoena power of Washington courts,

4    but fails to list specific individuals from CCT who will be witnesses.  (Reply at 9-10.)

5    LifeLast counters that Travelers offers no evidence that any witness located in Utah

6    would be unwilling to testify at trial in Washington.  (Resp. at 10-11.)  Indeed, Travelers

7    has failed to specifically identify a single non-party witness in Utah who is unwilling to

8    testify at trial in Washington.  (Reply at 10.)  The burden of proof on this issue rests on

9    Travelers, and it has failed to come forward with any evidence on the issue.  Accordingly,

10   the court concludes that this factor weighs against transfer.

11        **8.  The Ease of Access to Sources of Proof**

12        The final *Jones* factor focuses on ease of access to sources of proof.  *Jones*, 211

13   F.3d at 499.  Specifically, this factor looks at the location of "the relevant witnesses and

14   other sources of proof."  *See Ahead*, 2013 WL 1747765, at *12 (citing *Jones*, 211 F.3d at

15   499).  Aside from witnesses, this factor also focuses on the location of records and

16   documents.  *See Costco*, 472 F. Supp. 2d at 1195 (citing *DeFazio v. Hollister Emp. Share*

17   *Ownership Trust*, 406 F. Supp. 2d 1085, 1091 (E.D. Cal. 2005), *Jones*, 211 F.3d at 499

18   and *Decker Coal*, 805 F.2d at 843).  Where documentary evidence can be produced

19   electronically, this factor does not support transfer absent some unique difficulty.  *See*

20   *Burns v. Gerber Prod. Co.*, 922 F. Supp. 2d 1168, 1173 (E.D. Wash. 2013).  Further, as

21   with factor seven, the focus is on "the materiality and importance of the anticipated

22

ORDER- 15

1  [evidence and] witnesses' testimony." *Lueck*, 236 F.3d at 1146 (citing *Gates Learjet*, 743

2  F.2d at 1335-36), *see also DeFazio*, 406 F. Supp. 2d at 1091.

3  As previously explained, the parties have argued that witnesses are located in both

4  Washington and Utah.  (Reply at 9; Buratto Decl. ¶ 5; Resp. at 10-11.)  In relation to the

5  records and documents, LifeLast contends that as part of its work in the Underlying

6  Action it maintains a database of documents that renders the original location of these

7  documents irrelevant with respect to their production in this suit.  (Buratto Decl. ¶ 7.)

8  Travelers argues that it might need additional documents beyond those contained in the

9  electronic database from the Underlying Action.  (Reply at 10.)

10  Because witnesses with relevant testimony are likely located in both Utah and

11  Washington, the court cannot conclude that the location of witnesses favors transfer.

12  Furthermore, most documentary evidence can now be produced electronically.  *See*

13  *Burns,* 922 F. Supp. 2d at 1168.  Thus, any additional documentation Travelers might

14  need is not likely to create a greater or lesser burden depending on whether this matter

15  proceeds in Washington or Utah.  *Id.*  Travelers has simply failed to show that this factor

16  favors Utah over Washington.  Thus, the court concludes that this factor is either neutral

17  or weighs against transfer.

18  //

19  //

20  //

21  //

22  //

### 9.  Other Relevant Factors[2]

Lastly, public policy considerations favor litigating this case in Washington. Public policy factors include the "local interest in having localized controversies decided at home" and deciding cases "where the claim arose." *Decker Coal*, 805 F.2d at 843. Additionally, states have an interest in providing a forum for their injured residents. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (noting that "California maintains a strong interest in providing an effective means of redress for its residents tortuously injured" in a case determining personal jurisdiction).

Here, although the Underlying Action arose in Utah, that dispute is completely resolved.  (Buratto Decl. ¶ 6.)  Utah might claim some lingering interest in a dispute between a Connecticut carrier and the subrogee of a Utah insured, but it would be minimal at best.  LifeLast has its principal place of business in Vancouver, Washington, and all of its employees are in Washington.  (*Id.* ¶¶ 4, 5.)  LifeLast is a resident of Washington, and it allegedly suffered injury due to the actions of an insurance company, which does business in this state.  Thus, Washington's interest in the present coverage action is greater than the Utah's interest.  The court concludes that this factor weighs against transfer.

//

//

_____

[2] The presence of a forum selection clause also can be a significant factor in the § 1404(a) analysis. *Jones*, 211 F.3d at 499.  However, neither party has identified a forum selection clause here.  Thus, this factor is irrelevant.

1      **10. Weighing the Factors**

2      In light of all the factors promulgated by the *Jones* court, transfer of venue is not

3 warranted.  The plaintiff's choice of forum, the parties' contacts with the forum, the

4 difference in the cost of litigation in the two forums, the availability of compulsory

5 process, the ease of access to sources of proof, and public policy all weigh against

6 transferring venue.  Only one factor, the location where the agreement was negotiated

7 and executed, arguably weighs in favor of transfer.  Additionally, familiarity with the

8 governing law, contacts relating to the plaintiff's cause of action, and forum selection

9 clause are all neutral.  On balance, these factors favor maintaining venue in Washington.

10 Accordingly, the Western District of Washington is the proper venue for this case under

11 28 U.S.C. § 1404(a).

12 **C. Travelers' Motion to Dismiss or Transfer Venue under the Doctrine of *Forum Non Conveniens***

13      Travelers asks this court to either dismiss or transfer venue under the doctrine of

14 *forum non conveniens*.  The common-law doctrine of *forum non conveniens* "has

15 continuing application [in federal courts] only in cases where the alternative forum is

16 abroad."  *See Sinochem*, 549 U.S. 422, 429 (2007) (citing *American Dredging*, 510 U.S.

17 at 449).  For the federal court system, Congress has codified the doctrine and provided

18 for transfer, rather than dismissal, when a sister federal court is a more convenient place

19 for trial under 28 U.S.C. §§ 1404 and 1406.  *See Sinochem,* 549 U.S. at 430 (citing 28

20 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice,

21 a district court may transfer any civil action to any other district or division where it

22

1   might have been brought."); *cf.* § 1406(a) ("The district court of a district in which is

2   filed a case laying venue in the wrong division or district shall dismiss, or if it be in the

3   interest of justice, transfer such case to any district or division in which it could have

4   been brought.")).  As discussed above, the analysis under § 1404(a) does not support

5   dismissal or transfer to the Central District of Utah.  Thus, Traveler's motion to dismiss

6   or transfer venue under the doctrine of *forum non conveniens* is DENIED.

7   **D. Travelers' Motion to Dismiss or Transfer Venue under the "*Brillhart* Abstention Doctrine"**

8

9           Travelers also asks this court to dismiss or transfer venue under the "*Brillhart*

10  Abstention Doctrine."  Under the discretionary *Brillhart* doctrine, a declaratory judgment

11  action in federal court is inappropriate when another proceeding is pending in state court

12  in which all the matters in controversy between the parties can be fully adjudicated.  *See*

13  *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("Ordinarily it would be

14  uneconomical as well as vexatious for a federal court to proceed in a declaratory

15  judgment suit where another suit is pending in a state court presenting the same issues,

16  not governed by federal law, between the same parties."); *see also EC-Magnuson Pointe,*

17  *LLC v. Magnuson Pointe, LLC v. Magnuson Pointe Condominium Ass'n*, 2010 WL

18  113646, *1 (W.D. Wash. Jan. 6, 2010).  Further, the *Brillhart* doctrine does not apply to

19  actions for damages, and a court may not rely solely on this doctrine to dispose of claims

20  for damages.  *See R.R. Street & Co. Inc. v. Transport Ins. Co.,* 656 F.3d 966, 977 (9th

21  Cir. 2011).

22

1    This case has no analogous proceeding pending in a state court in which the

2    matters in controversy could be fully adjudicated.  The Underlying Action was between

3    LifeLast and CCT/Mattson, but it has been settled.  (Buratto Decl. ¶ 6.)  Further, the

4    matter in controversy and the parties in this case are different than those in the

5    Underlying Action.  Lastly, LifeLast's action contains claims for both monetary and

6    declaratory relief.  (Notice Ex. 1 (Compl.) ¶¶ 37, 54.)  Thus, the *Brillhart* doctrine does

7    not apply.

8                                    **CONCLUSION**

9    For the reasons stated above, the court DENIES Defendant's motion to dismiss or

10   transfer venue (Dkt. # 10).

11   Dated this 29th day of September, 2014.

12

13

14   _____

15   JAMES L. ROBART
     United States District Judge

16

17

18

19

20

21

22

ORDER- 20